NATIONWIDE MUTUAL INSURANCE COMPANY et al.

v.

ECKMEYER, Appellee; Grange Guardian Insurance Company, Appellant.

[Cite as *Nationwide Mut. Ins. Co. v. Eckmeyer* (2001), 145 Ohio App.3d 753.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2000–P–0054.

Decided Sept. 10, 2001.

*James E. Banas* and *Paul R. Hoffer,* for appellee.

*Hanna, Campbell & Powell, Donald A. Powell* and *Robert L. Tucker,* for appellant.

FORD, Presiding Judge.

Appellant, Grange Guardian Insurance Company, appeals from the March 23, 2000 judgment entry of the Portage County Municipal Court, Ravenna Division.

Appellee, Joseph W. Eckmeyer, was a driver for The Record Courier, from the summer of 1996 through May 1997. His primary duty as a driver was to deliver

newspapers. On February 4, 1997, appellee was involved in an automobile accident. At that time, he had an automobile insurance policy ("the insurance policy") with appellant. The insurance policy included a series of exclusions. One of the exclusions was for "Bodily injury or property damage arising out of the ownership, maintenance or use of a vehicle when used: * * * b. For retail or wholesale delivery, including pizza, magazine, newspaper and mail delivery."

Appellee testified that on the day of the accident, he picked up newspapers from The Record Courier at noon. He then delivered bundles of papers to stores and to other delivery personnel. After dropping off the bundles of papers, appellee went to pick up his wife, Rebecca Marie Eckmeyer ("Mrs. Eckmeyer"), who was his girlfriend at that time. When appellee stopped making deliveries in order to pick up Mrs. Eckmeyer, he still had two hundred twenty residential deliveries to make and there were two or three bundles of newspapers on the passenger seat of his car. The accident occurred at approximately 2:00 p.m., and appellee was expected to complete his deliveries by 5:00 p.m.

Mrs. Eckmeyer testified that she assisted appellee "almost every day" in making his newspaper deliveries. She would sit in the passenger seat of his car and place the newspapers in the newspaper delivery boxes on the side of the road. She further testified that "[appellee] would come pick me up in the middle of his route and then we would finish his route together."

The accident involved a collision with Frederick F. Lentz II ("Lentz"), who was insured by Nationwide Mutual Insurance Company ("Nationwide"). Appellee was found to be at fault. Nationwide and Lentz filed a complaint on January 29, 1999, naming appellee as the defendant.[1] Based on the exclusion contained in the insurance policy, appellant refused to defend appellee in a suit brought by Nationwide. Consequently, appellee filed a complaint on March 23, 1999, naming appellant as the third-party defendant, arguing that, pursuant to the insurance policy, appellant was required to defend appellee against Nationwide and Lentz's claim and to pay on any judgment. On November 8, 1999, Nationwide and Lentz dismissed their cause of action against appellee as the result of appellee's entering into an agreement to pay Lentz and Nationwide $1,722.40.

Appellant filed a motion for summary judgment on September 29, 1999. The trial court overruled this motion on November 19, 1999. A bench trial was held on March 1, 2000. On March 23, 2000, the trial court entered judgment for

---

1. The cost of repairs to Lentz's car was $1,772.40. Nationwide paid $1,522.40 of the repair bill. Lentz paid the remaining $250, which represented the amount of his deductible. In their lawsuit, Nationwide was seeking to recover the $1,522.40 it paid to Lentz, and Lentz was seeking to recover his $250 deductible.

appellee. Appellant has filed a timely appeal and raises the following assignment of error:

"The trial court erred in finding that the exclusion for damages arising out of the ownership, maintenance or use of a vehicle when used for retail or wholesale delivery, including pizza, magazine, newspaper and mail delivery was ambiguous."

Appellant contends that the trial court improperly found ambiguity in the terms of the insurance policy. We agree.

We would note, initially, that the construction of an insurance contract, like the construction of any written contract, is a matter of law. *Feldkamp v. USAA Ins. Co.* (2000), 139 Ohio App.3d 118, 122, 743 N.E.2d 405. In construing an insurance contract, a court should attempt to determine the intention of the parties. *Wurth v. Ideal Mut. Ins. Co.* (1987), 34 Ohio App.3d 325, 329, 518 N.E.2d 607. If the language of an insurance policy is unambiguous, the policy should be enforced as written. *Id.* If a provision is open to more than one interpretation, it should be construed against the insurer and in favor of the insured. *Meeker v. Bituminous Cas. Corp., Inc.* (Feb. 5, 1999), Hamilton App. No. C–970977, unreported, 1999 WL 49169, at 2.

In this case, the trial court chose to construe "the policy liberally against the insurer and in favor of the insured * * *." This court, however, is unable to find any ambiguity in the relevant policy exclusion. It states, in part, that the insurance policy excludes "property damage arising out of the * * * use of a vehicle when used * * * [f]or retail * * * delivery, including * * * newspaper * * * delivery."

The facts presented at trial indicate that appellee was involved in acts consistent with the delivery of newspapers at the time of the accident. Appellee typically picked up his newspapers at noon. He was expected to complete his deliveries by 5:00 p.m., and the accident occurred at 2:00 p.m.[2] At that time, appellee still had two hundred twenty residential deliveries to complete. The newspapers to be delivered were in his car in the front passenger seat. Appellee was on the way to pick up Mrs. Eckmeyer, who testified that she assisted appellee almost every day in making his residential newspaper deliveries. In short, the facts indicate that, at the time of the accident, appellee was going to pick up Mrs. Eckmeyer so that she could assist him with completing his route.

Appellee did not testify that, at the time of the accident, he was taking a lunch break, or that he had completed his deliveries for the day, or that he was driving

---

2. We would note that the issue of whether appellee was an employee of appellant, or an independent contractor, has not been raised by either side in this case, and has no bearing on our result.

to Mrs. Eckmeyer's home for the purpose of making a social call. All of the testimony at trial indicates, to the contrary, that he was traveling to Mrs. Eckmeyer's home, in his capacity as a driver for The Record Courier, for the purpose of having her assist him in completing his residential deliveries. Further, the trial court did not make any findings of fact that contradict this interpretation of the events of that day. Rather, it chose to construe "delivery" narrowly, thereby limiting it to the direct movement from one customer to the next. As a matter of law, we disagree.

In the view of this court, the term "delivery" should be construed to include all work-related activity engaged in by an insured whose primary work-related responsibility is as a delivery driver in the course of his or her working day. See *Shuback v. State Auto. Mut. Ins. Co.* (Dec. 6, 1999), Mahoning App. No. 97–CA–176, unreported, 1999 WL 1138563, at *4 (the court found that an independent contractor was still engaged in the business of delivering an automobile when, after having delivered a vehicle, he was in an accident on the return trip: "He would not have been in Columbus on that day and would not have been driving home from Columbus with these particular people had he not been engaged in the business of driving an auto dealer's vehicles to the auction."). In this case, appellee would not have been driving to Mrs. Eckmeyer's home at that time but for the fact that he was engaged in delivering newspapers. Therefore, in the opinion of this court, the plain meaning of the insurance policy is that, at the time the accident occurred, appellee was excluded from coverage.

For the foregoing reasons, appellant's assignment of error is well taken  The judgment of the Portage County Municipal Court, Ravenna Division, is reversed, and judgment is entered for appellant.

*Judgment reversed.*

NADER, J., concurs.

GRENDELL, J., dissents.

GRENDELL, Judge, dissenting.

The majority in this case reverses the trial court's decision and enters judgment for third-party defendant-appellant, Grange Guardian Insurance Co. I respectfully dissent.

The threshold issue in this case is *not* whether the insurance contract at issue is ambiguous. There is no question that the contractual language, concerning the "delivery" exclusion to coverage, could be clearer. However, the real issue in this case is the following question raised by the language in that contract: what physical activities constitute "retail or wholesale delivery, including * * * news-

paper * * * delivery" for purposes of the exclusion of coverage under that contract?

The trial court chose to construe that definitionless exclusionary provision "liberally against the insurer and in favor of the insured." The majority sees no ambiguity and elects to apply a sweeping definition to the word "delivery." The majority takes the view that "the term 'delivery' should be construed to include all work-related activity engaged in by an insured whose primary work-related responsibility is as a delivery driver in the course of his or her working day." This definition is overly broad. The obvious purpose of the "delivery" exclusion in an automobile insurance contract is to preclude coverage from accidents arising from the increased opportunities for accidents caused by the stop-and-go, in-and-out-of-traffic actions that are an integral part of the delivery process. Quantifying this risk is difficult, at best. Therefore, this risk is contractually excluded. The majority's definition goes far beyond the "delivery" risks involved in the actual physical delivery process to "all work-related activity." Indeed, under the majority's analysis, appellee Eckmeyer would not be covered by his insurance if he was involved in an accident on his way to a gas station on a work day morning to buy gas or put air in his tires in anticipation of making his deliveries later that afternoon because such otherwise normal preparatory actions for other drivers would be "work-related" to Eckmeyer. Logically, such incongruous result could not be the purpose of the "delivery" exclusion in the insurance contract at issue.

The word "delivery" should be given its common meaning. The word "deliver" means to take *and* hand over to or leave for another. Webster's Ninth New College Dictionary (1983) 336. Thus, the key to making a "delivery" is the physical act of handing it over to or leaving it for the recipient. This action, pulling up to people's newspaper boxes, is the physical part of the delivery process that sets delivery people, like Eckmeyer, apart from the rest of the general automobile operators on the road. Hence, it is the physical involvement in this actual door-to-door or paper-box-to-paper-box activity that logically falls within the contractual "delivery exclusion."

Merely picking up a helper (as in this case), gasoline, tires, or even lunch should not be included within the definition of "delivery," even though some or all of the those activities (undertaken by nondelivery drivers as well) may, in the case of a delivery driver, be "work-related." To hold otherwise would hold delivery drivers, when not directly engaged in the actual physical delivery process, to a different standard than the driving public at large. If this is the insurance company's intent, the company should clearly, expressly define "delivery" in its contract to exclude such pre-delivery, preparatory actions.

This case is readily distinguishable from the facts in *Shuback v. State Auto. Mut. Ins. Co.* (Dec. 6, 1999), Mahoning App. No. 97–CA–176, unreported, 1999

WL 1138563, cited by the majority. In *Shuback,* the court found that a person was still engaged in the business of delivering an automobile out of town when he was returning from an out-of-town location to his place of origin. In that case, the delivery driver was literally still on his actual delivery route, which began when he left with the delivery vehicle and did not end until he returned. In *Shuback,* the delivery process started when the driver left with the vehicle he was delivering. In this case, Eckmeyer's delivery route began when he started dropping off newspapers. Eckmeyer was *not* engaged in the physical delivery process on his actual delivery *route* when the accident occurred.

For the reasons stated above, the trial court was correct in finding that Eckmeyer's accident did not occur during the "delivery" of newspapers for purposes of the insurance exclusion provision in the subject contract. I would respectfully affirm the trial court's decision.