OPINION
{¶ 1} Appellants, Herbert A. Polk ("Herbert Polk") and Marilyn Polk, appeal from the July 30, 2004 judgment entry of the Portage County Court of Common Pleas, dismissing appellants' claims against defendants, The Landings of Walden Condominium Association ("the Landings"), Aurora Management, Inc. ("Aurora"), and Erie Insurance Company ("Erie"), and against appellees, Lumbermens Mutual Casualty Company ("Lumbermens"), and Cincinnati Insurance Company ("Cincinnati").[1]
 {¶ 2} On March 8, 2001, appellants filed a complaint against the Landings, Aurora, Erie, Lumbermens, and Cincinnati, alleging breach of contract against all five; breach of fiduciary duty, negligence, and failure to disclose presence of known toxic molds against the Landings and Aurora; and declaratory relief, lack of good faith, and reformation against Erie, Lumbermens, and Cincinnati. On May 9, 2001, Erie and appellee Cincinnati filed separate answers. On May 10, 2001, the Landings filed an answer. On May 22, 2001, appellee Lumbermens filed an answer. Aurora filed an answer on June 6, 2001.
 {¶ 3} On December 17, 2001, appellants filed an amended complaint reasserting essentially the same claims against the Landings, Aurora, Erie, Lumbermens, and Cincinnati. On December 21, 2001, appellee Lumbermens filed an answer. On December 31, 2001, appellee Cincinnati filed an answer. Erie filed an answer on January 17, 2002. On March 18, 2002, the Landings and Aurora filed an answer.
 {¶ 4} On August 20, 2003, appellee Cincinnati filed a motion for summary judgment pursuant to Civ.R. 56. On August 22, 2003, appellee Lumbermens and Erie filed motions for summary judgment. On November 14, 2003, appellants filed a combined motion for declaratory relief and brief opposing Erie's motion for summary judgment. Also, on November 14, 2003, appellants filed a combined motion for declaratory relief and brief opposing the motions for summary judgment of appellee Lumbermens and appellee Cincinnati.
 {¶ 5} Pursuant to its March 29, 2004 judgment entry, the trial court granted Erie's motion for summary judgment.
 {¶ 6} In its March 29, 2004 judgment entry, the trial court granted appellee Cincinnati's motion for summary judgment in part and denied it in part. The trial court granted appellee Cincinnati's motion for summary judgment regarding appellants' claims for breach of contract, and denied its motion with respect to loss or damage by mold to scheduled personal property, for lack of good faith, and for reformation. The trial court denied appellants' motion for declaratory relief. Upon reconsideration, and by agreement of the parties, the trial court indicated in its June 8, 2004 judgment entry that appellants' reformation claim was moot.
 {¶ 7} Also, on March 29, 2004, the trial court granted appellee Lumbermens's motion for summary judgment in part and denied it in part. The trial court granted appellee Lumbermens's motion for summary judgment regarding appellants' claims for breach of contract and denied its motion with respect to loss or damage by mold to personal property and for lack of good faith. The trial court denied appellants' motion for declaratory relief. Upon reconsideration, the trial court indicated in its June 8, 2004 judgment entry that appellants' claims were not timely filed and granted appellee Lumbermens's motion for summary judgment regarding appellants' claims for loss or damage by mold.
 {¶ 8} The facts pertinent to this appeal are as follows: Appellants purchased their condominium in 1989, and obtained homeowner's insurance from appellee Lumbermens in 1990. According to appellant Herbert Polk's deposition, between 1990 to 1997, appellants experienced persistent water intrusion problems in their unit, including leaks around the sliding doors and roof leaks around the chimney. Appellants reported these leaks to the Landings for repair.
 {¶ 9} In August 1996, Bob and Dorothy Harold ("the Harolds"), appellants' neighbors, filed a complaint against the Landings alleging that their unit was water/mold-damaged as a result of the Landings's failure to adequately repair the roof of their condominium.
 {¶ 10} In August 1997, at the request of the Landings, Philip R. Morey ("Dr. Morey"), director of microbiology and vice president of Air Quality Sciences-Building Consulting, Inc., tested the Harolds' and appellants' units, as well as two other units, for toxic mold. Dr. Morey testified in his deposition that he found a high level of penicillium-aspergillus and an elevated level of stachybotrys, two toxigenic molds, in appellants' condominium. Dr. Morey recommended fixing the moisture problem in appellants' unit, removing the fungal growth found in the basement storage room, and retesting. Dr. Morey indicated that the mold was discoverable on the date of inspection and opined that the occupants of the dwelling would have been able to see the visible mold.
 {¶ 11} In February 1998, appellant Herbert Polk stated that two representatives of the Landings, William Hauserman ("Hauserman") and Byron Krantz ("Krantz"), came to their unit, told appellants that there was some moisture in the lower level storage room, and that they should get a dehumidifier. Both Hauserman and Krantz testified in their depositions that they specifically instructed appellants that mold was present in their unit. Hauserman and Krantz told appellants to clean the mold with bleach and to place a plastic sheet over the mold to prevent spreading. However, appellants denied that they were ever told about the presence of mold during the February 1998 meeting, but stated that they were instructed to purchase a dehumidifier to remedy the moisture problem, which they did.
 {¶ 12} In October 1998, the Landings replaced the roof on appellants' unit. Appellant Herbert Polk indicated that approximately two to three years before the roof was replaced, he noticed and treated about two to three times an accumulation of mildew on the outer surface of the ceiling in appellant Marilyn Polk's office on the north side of the stairwell heading up to the third floor of the condominium.
 {¶ 13} In November 1998, Dr. Morey prepared a written report of his findings regarding appellants' and the Harolds' units. In January 1999, appellee Lumbermens policy period expired. In March 1999, appellants obtained insurance coverage with appellee Cincinnati. In May 1999, appellants reported water leaks around their sliding door and ultimately the gutters, flashing, and siding were replaced.
 {¶ 14} In February 2000, the Landings settled the Harolds' lawsuit. The Harolds ran an advertisement in the local newspaper which stated that their unit was infected with toxic mold. Appellants requested Dr. Morey's 1997 written report at that time in February 2000. Appellants again reported water from the top of their sliding door, and rotted wood was replaced in addition to repairs to the siding, flashing, and gutters.
 {¶ 15} On February 14, 2000, Nyzen Consulting ("Nyzen") performed an inspection of appellants' unit. On or after February 14, 2000, appellant Herbert Polk spoke with a representative from Nyzen who informed him that black mold was found in appellants' basement. On March 27, 2000, appellants were mailed copies of Dr. Morey's and Nyzen's reports. In April 2000, after appellants received copies of the reports, they never returned to their condominium from their winter residence in Florida. Also, in April 2000, appellants gave notice of a water/mold claim to appellee Lumbermens and appellee Cincinnati.
 {¶ 16} In January 2001, appellants sustained a plumbing break in the second floor bathroom. According to the depositions of appellant Herbert Polk and John Telesz ("Telesz"), a forensic engineer hired by appellants to inspect their condominium, the leak lasted for approximately four and a half days before being discovered and leaked about 62,000 to 63,000 gallons of water into appellants' unit which caused extensive damage.
 {¶ 17} Telesz testified in his deposition that he was not an expert in mold. Telesz opined that the sources of past or present moisture incursion in appellants' unit consisted of leaks in the breezeway roof, the main roof around the chimney, around the sliding glass doors, and in the lower level shower as well as moisture infiltration through the main roof.
 {¶ 18} Pursuant to the trial court's July 30, 2004 "Stipulation of Dismissal and Judgment Entry," appellants settled and dismissed all claims against the Landings and Aurora; settled and dismissed all contractual claims for scheduled personal property against appellee Cincinnati and appellee Lumbermens; and settled and dismissed all claims for bad faith, lack of good faith and/or all other extra-contractual claims against appellee Cincinnati and appellee Lumbermens. The trial court stated that by virtue of the foregoing settlements, all of the trial court's prior rulings on summary judgment shall become final and appealable. It is from that judgment that appellants filed a timely notice of appeal and make the following assignments of error:[2]
 {¶ 19} "[1.] The trial court erred in finding the mold exclusions contained in the carriers' policies precluded coverage for the water damage done to [appellants'] dwelling and unscheduled personal property and for their claim for loss of use.
 {¶ 20} "[2.] The trial court erred in determining the issue of efficient proximate cause as a matter of law.
 {¶ 21} "[3.] The trial court erred in holding that [appellants'] claim against [appellee] Lumbermens for the water intrusion damages was not timely filed."
 {¶ 22} Appellee Lumbermens raises the following assignments of error on cross-appeal:
 {¶ 23} "[1.] The trial court erred by denying [appellee] Lumbermens['s] motion for summary judgment and declaring that [appellants'] claims for damage caused by mold are not, as a matter of law, time-barred by the one-year limitations period in the policy.
 {¶ 24} "[2.] The trial court erred by denying [appellee] Lumbermens['s] motion for summary judgment and declaring that [appellants'] alleged losses occurred during a Lumbermens['s] policy period."
 {¶ 25} Because appellants' first and second assignments of error are interrelated, we will address them in a consolidated fashion. In their first assignment of error, appellants argues that the trial court erred in finding that the mold exclusions contained in appellee Lumbermens's and appellee Cincinnati's policies precluded coverage for the water damage done to their condominium and unscheduled personal property and for their claim of loss of use. Appellants assert that the trial court ignored the concurrent causation and efficient proximate cause rules to their prejudice. In their second assignment of error, appellants allege that the trial court erred in determining the issue of efficient proximate cause as a matter of law.
 {¶ 26} In order for a summary judgment to be granted, the moving party must prove:
 {¶ 27} "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein (1996),76 Ohio St.3d 383, 385.
 {¶ 28} The Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296, that:
 {¶ 29} "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record whichdemonstrate the absence of a genuine issue of fact on a materialelement of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 30} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. TheBrown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 31} This court stated in Ridgway v. Grange Mut. Cas. Co.
(Apr. 19, 2002), 11th Dist. No. 2001-P-0067, 2002 Ohio App. LEXIS 1919, at 3, that:
 {¶ 32} "[t]he construction of an insurance contract is a matter of law. Nationwide Mut. Ins. Co. v. Eckmeyer (2001),145 Ohio App.3d 753, [756] * * *. In construing an insurance contract, a court should attempt to determine the intention of the parties and, if the language of the policy is unambiguous, it should be enforced as written. Id. However, if a provision is open to more than one interpretation, it should be construed against the insurer and in favor of the insured. Id." (Parallel citation omitted.)
 {¶ 33} In the case at bar, appellee Lumbermens's policies were in effect from January 18, 1997 through January 18, 1998, and from January 18, 1998 through January 18, 1999. The property coverage section, Coverage Form VS 1226, contains the following language:
 {¶ 34} "Section I — perils insured against
 {¶ 35} "Coverage A — Dwelling and Coverage B — otherstructures
 {¶ 36} "We insure against risks of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however, we do not insure loss:
 {¶ 37} "* * *
 {¶ 38} "2. Caused by:
 {¶ 39} "* * *
 {¶ 40} "e. Any of the following:
 {¶ 41} "* * *
 {¶ 42} "3) Smog, rust or other corrosion, mold, wet or dry rot[.]
 {¶ 43} "* * *
 {¶ 44} "3. Excluded under Section I — Exclusions.
 {¶ 45} "Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or expected in this policy is covered."
 {¶ 46} Appellee Lumbermens policy also contains Endorsement VS 1046 which amends the foregoing language as follows:
 {¶ 47} "Kemper Insurance Package
 {¶ 48} "Special Personal Property Coverage
 {¶ 49} "Section I property coverages
 {¶ 50} "For an additional premium, the Perils Insured Against under Coverages A, B and C are deleted and the following substituted:
 {¶ 51} "Section I — Perils Insured Against
 {¶ 52} "We insure against risks of direct loss to property described in Coverages A, B and C, only if that loss is a physical loss to property; however, we do not insure loss:
 {¶ 53} "1. Under Coverages A, B and C:
 {¶ 54} "* * *
 {¶ 55} "b. Caused by:
 {¶ 56} "* * *
 {¶ 57} "4)
 {¶ 58} "* * *
 {¶ 59} "c) Smog, rust, or other corrosion mold, wet or dry rot[.]
 {¶ 60} "* * *
 {¶ 61} "Under items 1) through 4), any ensuing loss to property described in Coverages A, B and C not excluded or expected in this policy is covered.
 {¶ 62} Policy VS 1226 also contains a contractual suit limitation clause which provides that:
 {¶ 63} "8. Suit Against Us. No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss."
 {¶ 64} Cincinnati's policy provides that:
 {¶ 65} "Section I — Perils Insured Against
 {¶ 66} "We insure against risks of direct loss to property described in Coverage C only if that loss is a physical loss to property; however, we do not insure loss:
 {¶ 67} "1. Under Coverage C
 {¶ 68} "* * *
 {¶ 69} "c. caused by:
 {¶ 70} "* * *
 {¶ 71} "(4) * * * mold * * *.
 {¶ 72} "* * *
 {¶ 73} "Under item c., any ensuing loss not excluded is covered."
 {¶ 74} Here, appellants are seeking insurance coverage for mold damage. The trial court correctly determined, pursuant to appellee Lumbermens's policy, that the mold exclusion excludes loss caused by mold. Coverage Form VS 1226 states that appellee Lumbermens does not insure loss caused by "[s]mog, rust or other corrosion, mold * * *." Endorsement VS 1046 provides that appellee Lumbermens does not insure loss caused by "[s]mog, rust, or other corrosion mold * * *." It is apparent that a comma is simply misplaced between the words "corrosion" and "mold" in the second list of exclusions. We agree with the trial court that the misplaced comma does not lead to any confusion as to whether "mold" is excluded as a mechanism of loss or damage from coverage. As noted by the trial court, since rust and corrosion are related and corrosion and mold are not, it is unreasonable to construe the policy as requiring the carrier to establish the existence of "corrosion mold."
 {¶ 75} With respect to appellee Cincinnati's policy, the trial court also properly determined that the mold exclusion precludes coverage for all physical loss to covered property caused by mold. Appellants' mold claim is not a "covered loss" under appellee Cincinnati's policy. Based on the record, the purported "water losses" which caused the alleged mold damage occurred long before the policy period commenced to qualify as "covered water losses" for purposes of appellee Cincinnati's policy.
 {¶ 76} In addition, we are not persuaded by appellants' contention that the insurance policies should cover mold damage if the mold was caused by a water leak citing the efficient proximate cause rule. The mold exclusions at issue apply to exclude losses caused by mold regardless of the initial or efficient proximate cause of the mold itself. Appellants seek coverage for damage caused by mold. Because the mold damage is excluded, it cannot be an ensuing covered loss. See Schrock v.Feazel Roofing Co., 5th Dist. No. 02CAE10049, 2003-Ohio-3742. Appellants' first and second assignments of error are without merit.
 {¶ 77} In their third assignment of error, appellants contend that the trial court erred in holding that their claim against appellee Lumbermens for water intrusion damages was not timely filed.
 {¶ 78} The discovery rule applies to actions alleging damage to real property, and the effect of the rule is to delay the commencement of the statute of limitations until "`it is first discovered, or through the exercise of reasonable diligence it should have been discovered, that there is damage to the property.'" Jones v. Hughey, 153 Ohio App.3d 314,2003-Ohio-3184, at ¶ 25, quoting Harris v. Liston (1999),86 Ohio St.3d 203, 207. "It is unnecessary that the full extent of damages be ascertainable and it is immaterial that additional damages may occur subsequently when determining the accrual date of a cause of action for statute of limitations purposes."Beavercreek Local Schools v. Basic, Inc. (1991),71 Ohio App.3d 669, 689. "* * * [A]n accrual of a cause of action is not delayed until the full extent of the resulting damage is known." Id.
 {¶ 79} In the instant matter, again, appellee Lumbermens's policy provides that: "[n]o action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." Although loss is not a defined term in appellee Lumbermens's policy, loss is defined in Gilbert's Law Dictionary (1994) 156, as: "[i]njury; forfeiture; deprivation; damage; deficiency."
 {¶ 80} Based on the record, appellants indicated that they knew about water intrusion problems in their unit between 1990 to 1997. Appellants testified in their depositions that these intrusions were reported to the Landings and repaired at their request. In addition, in August 1997, toxic mold was discovered in appellants' unit. Again, Dr. Morey opined that appellants should have been able to see the visible mold. Both Hauserman and Krantz, representatives of the Landings, testified that they specifically instructed appellants in February 1998, that mold was present in their unit. We must note that appellant Herbert Polk testified in his deposition that he was aware of an accumulation of mildew growth on the outer surface of the ceiling of his wife's office in their unit and had treated the growth with bleach on at least a couple of occasions over a two to three year period before the roof was replaced in 1998. Here, appellants did not file suit until March 2001, more than one year after discovering the loss or more than one year of the date that the loss was discoverable. See Hughey, supra. Appellants' third assignment of error is without merit.
 {¶ 81} Turning to appellee Lumbermens's assignments of error on cross-appeal, it argues in its first assignment of error that the trial court erred, pursuant to its March 29, 2004 judgment entry, by denying in part its motion for summary judgment and declaring that appellants' claims for damage caused by mold are not, as a matter of law, time-barred by the one-year limitations period in the policy. Appellee Lumbermens stresses that the date of loss of a property damage claim under a homeowner's policy is the date that the loss is either discovered or reasonably discoverable, whichever occurs first.
 {¶ 82} In its March 29, 2004 judgment entry, the trial court determined that appellants became aware of the mold condition in their unit in April 2000. The trial court indicated that because appellants filed the action on March 8, 2001, the action was timely filed pursuant to the one year requirement contained in appellee Lumbermens's policy. Thus, the trial court denied appellee Lumbermens's motion for summary judgment regarding appellants' claims for loss or damage by mold.
 {¶ 83} However, pursuant to appellee Lumbermens's motion for reconsideration, in its June 8, 2004 judgment entry, the trial court determined that appellants' claims were not timely filed.[3] Therefore, the trial court granted appellee Lumbermens's motion for summary judgment regarding appellants' claims for loss or damage by mold. As such, appellee Lumbermens's first assignment of error on cross-appeal is without merit.
 {¶ 84} In its second assignment of error on cross-appeal, appellee Lumbermens asserts that the trial court erred, pursuant to its March 29, 2004 judgment entry, by denying in part its motion for summary judgment and declaring that appellants' alleged losses occurred during the policy period. Appellee Lumbermens alleges that under a manifestation theory, if the loss was truly not known or discoverable to appellants until April 2000, none of appellants' claims occurred during the policy period.
 {¶ 85} The Supreme Court of Ohio in Goodyear Tire RubberCo. v. Aetna Casualty Surety Co., 95 Ohio St.3d 512,2002-Ohio-2842, paragraph one of the syllabus, stated that: "[w]hen a continuous occurrence of environmental pollution triggers claims under multiple primary insurance policies, the insured is entitled to secure coverage from a single policy of its choice that covers `all sums' incurred as damages `during the policy period,' subject to that policy's limit of coverage." See, also, Keene Corp. v. Ins. Co. of N. Am. (C.A.D.C. 1981),667 F.2d 1034.
 {¶ 86} In the case sub judice, the trial court properly applied the continuous trigger theory. Relying on Goodyear,
supra, the trial court stated in its March 29, 2004 judgment entry that:
 {¶ 87} "[a] continued occurrence of damage or injury from environmentally hazardous substances, such as mold, triggers coverage under all the insurance policies in effect during the occurrence of the hazard. * * *
 {¶ 88} "It is apparent that mold was found to have existed in [appellants'] dwelling unit by [the Landings] during the policy period of the insurance policy issued by [appellee] Lumbermens. Whether [appellants] were made aware or discovered the existence of mold at that time is disputed. Alternatively, and again construing the evidence most favorably for [appellants], it must be concluded that contamination continued until [appellants] became aware of the mold condition around April 2000, when [appellee] Cincinnati's policy was in effect. Under Goodyear,
[appellants'] claim of loss implicates both [appellee] Lumbermens['s] and [appellee] Cincinnati's policies."
 {¶ 89} We agree.
 {¶ 90} Again, water intrusions occurred and mold was detected in appellants' unit during appellee Lumbermens's policy periods. Coverage is triggered so long as property damage occurs during the policy period. Based on the record, mold was present by at least August 1997, during appellee Lumbermens's policy period, and continued into appellee Cincinnati's policy period when further water intrusions occurred. Pursuant to appellants' position, they did not discover any loss until April 2000, when they read Dr. Morey's report. However, water intrusions began in appellants' unit in 1990, and toxic mold was discovered in 1997, during appellee Lumbermens's policy period. Thus, based onGoodyear, supra, the trial court did not err by determining that appellants' claim of loss implicates both appellee Lumbermens's and appellee Cincinnati's policies. Appellee Lumbermens's second assignment of error on cross-appeal is without merit.
 {¶ 91} For the foregoing reasons, appellants' assignments of error and appellee Lumbermens's assignments of error on cross-appeal are not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.
O'Neill, J., O'Toole, J., concur.
[1] Appellants appeal from four additional trial court judgment entries: two from March 29, 2004, and two from June 8, 2004. Pursuant to its July 30, 2004 judgment entry, the trial court indicated that all of its prior rulings on summary judgment shall become final and appealable.
[2] The Landings, Aurora, and Erie are not parties to the instant appeal.
[3] We note that interlocutory orders are subject to motions for reconsideration whereas judgments and final orders are not.Pitts v. Ohio Dept. of Transp. (1981), 67 Ohio St.2d 378, 379. Civ.R. 54(B) allows for reconsideration or rehearing of interlocutory orders. Apparently, Civ.R. 54(B) is applicable here. However, because the parties do not raise the issue, we will not address it further.