**WEST AMERICAN INSURANCE COMPANY, Appellee,**

v.

**SLUDER et al., Appellants.**

[Cite as *W. Am. Ins. Co. v. Sluder* (1997), 119 Ohio App.3d 211.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960408.

Decided April 16, 1997.

---

*McCaslin, Imbus & McCaslin* and *Thomas J. Gruber*, for appellee.

*Thomas J. Ruwe*, for appellants Kevin Sluder and Paula Sluder.

*Rodger N. Walk*, for appellants Mark Gregware and Tonya Gregware.

MARIANNA BROWN BETTMAN, Presiding Judge.

## PROCEDURAL POSTURE

This appeal arises from a declaratory judgment action brought by plaintiff-appellee, West American Insurance Company ("West American"), seeking a determination of its duties under the homeowners' policy of its insureds, defendants-appellants Kevin and Paula Sluder, for injuries to Ali Gregware ("Ali"), the minor daughter of defendants-appellants Mark and Tonya Gregware. The injuries occurred at the Sluders' residence.[1] After a trial to the court, the court entered judgment in favor of West American.[2] All defendants appealed and filed a joint brief. The gravamen of their appeal is that the trial court should have found Ali's injuries covered under the Sluders' policy and granted judgment in their favor and against West American.

## FACTUAL BACKGROUND

Paula Sluder provided day care out of her home, where she watched a number of children during set hours for a charge of $75 per week. One of these children was Ali Gregware. Mrs. Sluder was generally very strict with parents, requiring them to pick up their children promptly. However, soon after she began watching Ali she became unusually close with Ali and Ali's mother and cared for Ali frequently at hours that were not part of her working day, and for no charge. Mrs. Sluder also performed services for Ali that she did not perform for the other children. On one of the occasions that Mrs. Sluder was caring for Ali after hours and at no charge, Ali was scalded in a bathtub of hot water. The question before the trial court was whether the Sluders' homeowners policy covered this incident.

## THE POLICY

The pertinent parts of the policy are:

"Section II— Exclusions, 1.b.(1)

---

1. We have *sua sponte* removed this case from the accelerated calendar.

2. The Gregwares filed a cross-claim against the Sluders, which was bifurcated from West American's claim for declaratory judgment. Following its decision in favor of the insurer, the trial court included a Civ.R. 54(B) certification, making this a final appealable order.

"Medical payments to others do not apply to bodily injury * * * arising out of or in connection with a business engaged in by an insured. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service * * * rendered, promised, owed, or implied to be provided because of the nature of the business.

"Definitions:

" 'Business' includes trade, profession or occupation. However, newspaper delivery, baby-sitting, caddying, lawn care and similar incidental business activities ordinarily conducted by minors shall not be considered 'business.'

"Endorsement HO–322

"If an insured regularly provides home day care services to a person or persons other than insureds and receives monetary or other compensation for such services, that enterprise is a business.

"* * *

"Therefore, with respect to a home day care enterprise which is considered to be a business, this policy:

"1. does not provide Section II—Liability Coverages because a business of an insured is excluded under exclusion 1.b.(1) * * * "

In construing this policy language, the trial court found that Mrs. Sluder was engaged in a business and was not acting as a baby sitter in taking children into her home on a regular basis for money. The court further acknowledged that:

"One can take care of a home-care client's child at certain times for the usual home-care fee, and be engaged in a business; and at the other times care for the child out of pure friendship for the client or affection for the child, and not be engaged in a business. The problem, of course, is making the distinction in fact."

It was for precisely this reason that the trial court overruled summary judgment motions filed by all parties. After hearing the evidence, the court determined that even though the service provided by Mrs. Sluder to Ali the night of the injury was not part of her normal business service, and she did not receive any compensation for it, the service was rendered or implied to be provided because of the nature of the business, and thus excluded from coverage.

## ASSIGNMENTS OF ERROR

We will begin with the appellants' fourth assignment of error, in which they argue that the trial court erred in overruling their motion for summary judgment. We accept absolutely the trial court's reasoning that a person can run a business during one part of the day and baby-sit or offer a personal accommodation at another time, and we agree with the trial court that this case required a

factual determination on this point. Thus, summary judgment was properly denied. Civ.R. 56. Appellants' fourth assignment of error is overruled.

■ We next address the second assignment of error, that the trial court erred in admitting the testimony of an agent of West American to explain the meaning of certain policy terms. We agree that this was error.

■ The language of this policy is not ambiguous; the case turns on the application of the language of the policy to the facts. Therefore, no testimony was needed to explain the plain meaning of the language used. Even if the policy language was ambiguous, it is the court that must decide what it means, based on well known rules construing the language against the drafter of the policy. *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949, syllabus. No help is needed from the insurer in this regard. However, in this case, the court's interpretation was clearly separate and independent of anything the agent said about the policy language. Though error, this was harmless and not prejudicial to the appellants. Civ.R. 61.

■ We will next address the first assignment of error, in which the appellants argue that the trial court should have granted judgment in their favor on the issues of coverage and indemnity. We agree.

After hearing all the evidence, the trial court concluded that the service rendered that caused the injury, namely the bath, was "rendered * * * or implied to be provided because of the nature of the business" and was thus excluded from coverage. We hold that the application of the policy language to the facts of this case requires the opposite conclusion.

There is no question that Mrs. Sluder was running a business, as defined in the policy. She was clearly conducting activities on a regular basis for the purpose of earning some additional income. That has generally been held to be a business pursuit. *Watkins v. Brown* (1994), 97 Ohio App.3d 160, 646 N.E.2d 485; see, also, *Lenart v. Doversberger* (May 12, 1994), Cuyahoga App. Nos. 65372, 65373, unreported, 1994 WL 189433.

There is also no question that Ali was one of the children Mrs. Sluder watched during her business day. Even though Ali's daycare hours varied more than the other children's due to Mrs. Gregware's schedule, there is no question that Ali was in day care for pay for part of the day. But that is not the end of the matter, for as the trial court observed, a person can run a daycare business during one part of the day and care for a child out of friendship or affection at another.

The record shows that Mrs. Sluder was very strict about parents observing the set hours and picking up their children promptly. Only on a very few occasions (three or four times in a year and a half) did she let some of the children stay

briefly beyond the regular day; and the very latest that they were picked up was fifteen minutes late. Mrs. Sluder was also very strict that none of the personal effects of her "day children" were to be mingled with those of her own family. She never gave any of the other children a bath. None of the other children in day care received the "extras" which Ali did after hours.

The record also demonstrates that after normal business hours, Ali became a virtual member of the Sluder household. Ali was taken out to the mall and visited the zoo with the Sluder boys. Ali ate dinner with the family, both at home and out. Ali kept her toothbrush in the family cup, and kept other personal effects, such as a hairbrush, a pacifier and clothes, at the Sluders'. Ali even had her own bed at the Sluders', and Mrs. Sluder would also do Ali's laundry.

When Ali would stay past the set, paid-for hours, her evening routine was the same as it was for Mrs. Sluder's boys. After the other children had left, Mrs. Sluder would feed dinner to Ali and her two boys, and then let them play before it was time for bed. Ali would take a bath and then be put down in her own bed at the Sluders' and rocked or read to sleep. It is fair to say that because of Mrs. Gregware's work and school schedule, Mrs. Sluder virtually stepped into the mother role for Ali. On one occasion, Mrs. Gregware even directed a doctor treating Ali to talk with Mrs. Sluder, who knew more about Ali's health condition than she did. Indeed, Ali called Kevin Sluder "Daddy Kevin," called Mrs. Sluder's sister "Aunt Bev" and called Mrs. Sluder's parents "Nana" and "Papa."

On the night that Ali was injured, Mrs. Gregware called Mrs. Sluder to tell her that she would be unable to pick up Ali at the set time because she had been called into work. As in the past, Mrs. Sluder agreed to watch Ali that night. After the other daycare children had gone home, Mrs. Sluder took Ali out because both of her boys were visiting her parents. Mrs. Sluder and Ali went to a toy store and then went to a fast-food restaurant for something to eat. Upon arriving back home, Mrs. Sluder's parents were back with her two boys. After her parents left, Mrs. Sluder gave her oldest son a bath while Ali played with her youngest son. Then, Mrs. Sluder gave her youngest son a bath. When he was finished, Mrs. Sluder prepared a bath for Ali.

When Ali was injured in the bath, she received precisely the kind of injury a homeowners' policy is designed to cover, not to exclude. We hold that when Ali was injured, it was clearly during a time of personal accommodation or friendship for Mrs. Gregware or affection for Ali, and was not "rendered or implied" to be provided as part of her business, as the trial court found. This first assignment of error is sustained, the trial court's judgment is reversed, and judgment is entered in favor of the appellants on coverage and indemnity. Accordingly, we

need not address the third assignment of error, which is moot.    App.R. 12(A)(1)(c).

*Judgment reversed.*

HILDEBRANDT and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired of the First Appellate District, sitting by assignment.