In this insurance action, plaintiff-appellant Jerald Meeker appeals the entry of the trial court granting summary judgment in favor of defendants-appellees, Bituminous Casualty Assurance Co. ("Bituminous"), Frank Lech, and Central Assurance Agency ("Central").
On September 17, 1992, Meeker was injured on his job at Whitling Lumber Millworks Co. ("Whitling") while operating a table saw from which the guard had been removed. Meeker filed an employer-intentional-tort claim against Whitling in August of 1994. When Meeker was injured, Whitling was insured under three policies issued by Bituminous and sold by Lech, who was employed by Central. When notified of the suit, Whitling contacted Bituminous for coverage. Bituminous denied any coverage to Whitling because of exclusion clauses pertaining to bodily injuries sustained due to intentional acts by the employer.
Meeker obtained a default judgment against Whitling and was thereupon awarded $1,000,000 in damages. Whitling then assigned its rights against Bituminous, Lech, and Central to Meeker, who filed a declaratory-judgment action to establish that insurance coverage existed for his injuries. A second action, filed against Lech, Central and Bituminous, sounded in breach of contract and further asserted various torts.[1] After Meeker and appellees filed cross-motions for summary judgment, the court denied Meeker's motion and granted summary judgment to Bituminous, Lech and Central. It is from this entry that Meeker appeals, bringing four assignments of error.
Although Meeker advances more than fifteen arguments in urging reversal, we consider only those issues necessary to resolve the assignments of error.
In his first and second assignments of error, Meeker contends that the trial court erred both when it granted appellees' motions for summary judgment and when it denied his motion for summary judgment.
Appellate review of summary judgment is conducted under a de novo standard.[2] Under Civ.R. 56(C), to grant a motion for summary judgment properly, a court, upon viewing the evidence in a light most favorable to the nonmoving party, must determine that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party.[3] The party moving for summary judgment under Civ.R. 56 bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.Dresher v. Burt.[4] When that burden is satisfied, the nonmoving part must produce evidence on any issue for which it bears the burden of production at trial. Civ.R. 56(E).
 The Policies
When the accident occurred, Whitling had three policies issued by Bituminous: (1) an employer's liability insurance policy (stopgap); (2) a commercial general liability policy (general liability); and (3) a commercial umbrella policy (umbrella). Bituminous denied coverage under each of these policies because of the exclusion clauses.
We hold that the exclusions in these policies clearly and unambiguously preclude coverage for employer intentional torts despite cumbersome arguments by Meeker to the contrary. A brief examination of these policies is in order.
 Stopgap Policy and General Liability Policy
The stopgap policy exclusion states that the insurance does not cover "bodily injury intentionally caused or aggravated by you [the insured], or bodily injury resulting from an act which is determined to have been committed by [the insured] with the belief that an injury is substantially certain to occur." Despite this language, Meeker argues that the stopgap policy should cover his injury because of a purported distinction between "belief and knowledge" as used in Ohio Supreme Court syllabi, and alternatively, because of definitional differences in the two terms.
Meeker argues that since the Ohio Supreme Court used "knowledge" in the syllabus of Van Fossen v. Babcock Wilcox[5]
and "belief" in the earlier decision in Jones v. VIPDevelopment,[6] knowledge is the standard and his claim is covered. The supreme court has used the two terms interchangeably throughout the body of case law that deals with intent in the area of employer intentional tort. Therefore, we reject this argument.
We also reject Meeker's attempt to create a meaningful legal dichotomy between knowledge and belief. Within the spectrum of belief and knowledge, knowledge is specific and thus a stricter standard. However, a belief standard is broader than, and subsumes, knowledge. Therefore, the stopgap policy language that states there is no coverage for employer acts committed with the "belief that an injury is substantially certain to occur," is not legally inconsistent with trial court's determination that the employer had "knowledge" that harm to the employee was a substantial certainty.
Meeker also argues that Bituminous should be estopped from denying him coverage for intentional torts. Prior to the purchase of the Bituminous insurance package, Whitling had coverage from USFG. When Lech sold the Bituminous policies to Whitling, Lech sent a letter to John Whitling asserting that he was able to reduce the premiums with "no reduction in coverages." Mr. Whitling maintained that he thought that the company had coverage for intentional torts under the USFG policy and therefore, based on Lech's representations, assumed the company also had this coverage under the Bituminous stopgap policy. Thus, a dispositive issue for the resolution of the first assignment of error is whether the USFG stopgap policy covered intentional torts.
The USFG policy contained a provision that excluded insurance for " '[b]odily injury' intentionally caused or aggravated by or at the direction of the insured or any executive officer, director or partner of the insured." (Emphasis added.)
Words and phrases used in an insurance policy must be given their "natural and commonly accepted meaning." Gomolka v. StateAuto Mut. Ins. Co.[7] It is axiomatic that where provisions of a contact of insurance are reasonably open to more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. Faruque v.Provident Life Acc. Ins. Co.[8] However, the general rule of liberal construction cannot be used to create an ambiguity where there is none. Karabin v. State Auto. Mut. Ins. Co.[9] Here, it is clear from the exclusion language in the USFG policy that the policy did not cover intentional torts. Consequently, although Whitling may have thought his company had intentional-tort coverage under the USFG policy and therefore retained that type of coverage when it purchased the Bituminous insurance policies, it neither had intentional-tort coverage nor retained it with Bituminous. Accordingly, we reject Meeker's estoppel arguments.[10]
Meeker also argues that the stopgap policy is illusory. As a result, Meeker argues that stopgap coverage should be found under a number of equitable remedies.
An important distinction must be made between an insurance policy that offers no coverage whatsoever in any circumstance, and an insurance policy that offers no coverage for the loss at hand. The former is an illusory policy; the latter is the circumstance in this case.
Our review of the stopgap policy persuades us that the policy does cover dual-capacity and out-of-state injuries, and consortium claims for members of employees' families. Therefore, we reject Meeker's argument that the stopgap policy is illusory.[11]
With respect to the general liability policy, we reject Meeker's similar argument that it, too, is illusory. The general liability policy, like the stopgap policy, specifically excludes coverage for intentional torts. However, our review of the general liability policy persuades us that the policy does cover injuries to non-employees. Therefore, we must reject Meeker's argument that the general liability policy covers nothing and is illusory.
Because we hold that both the stopgap and the general liability policies provide coverage for losses other than those at hand, we do not agree that these insurance contracts are illusory. Whether the provided coverage was something Whitling really needed, we cannot say.
 Commercial Umbrella Policy
Meeker advances a series of alternate arguments that assert the applicability of the commercial umbrella policy. Because we have concluded that the underlying insurance did not cover Meeker's injuries, we hold there is no coverage under the umbrella policy.
An umbrella policy covers only those damages in excess of the coverage provided by all other applicable insurance policies.Cleveland Builders Supply Co. v. Farmers Ins.[12] The insuring-agreement section of the umbrella policy states that the policy applies to bodily injury or property damage covered by any "underlying insurance," but does not apply to bodily injury or property damage either "expected or intended" from the standpoint of any insured. The declarations section of the umbrella policy specifies the underlying insurance as the general liability policy and the stopgap policy.[13] An umbrella policy does not apply where there is no underlying insurance coverage for the loss. See Rath v. Grange Mutual Ins. Co.[14] In our preceding discussion, we have already determined that Meeker's injuries were not covered by the underlying insurance. Thus, in the absence of the underlying coverage, the umbrella policy does not cover Meeker's injuries.
Therefore, in light of the discussions above, we overrule Meeker's first and second assignments of error.
In his third assignment of error, Meeker argues that the trial court erred when it granted appellees' motion to strike the affidavit of Monica Bohlen. Meeker offered the affidavit of Bohlen, a partner in the firm representing him, as an expert on the coverage afforded under the USFG policy. The interpretation of an insurance contract involves a question of law to be decided by the court. The language in the USFG policy is unambiguous. It is for the court to determine, based on well-known rules of construction, without any assistance from an "expert," what effect to give the language of an insurance policy. Leber v. Smith.[15] Accordingly, Meeker's third assignment of error is overruled.
In his fourth assignment of error, Meeker argues that the trial court erred when it denied his motion to deem certain requests admitted. Management of discovery lies within the sound discretion of the trial court. Rigby v. Lake County.[16]
Abuse of discretion has been defined as implying that the trial court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore.[17] Absent abuse, we will no disturb the trial court's decision. State ex rel. Daggett v. Gessaman.[18]
Finding no abuse of discretion, we overrule Meeker's fourth assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
DOAN, P.J., M.B. BETTMAN and PAINTER, JJ.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] The two actions were consolidated by the trial court.
[2] Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579,641 N.E.2d 265.
[3] Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,364 N.E.2d 267, 274.
[4] (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264, 273; Fyffe v.Jeno's, Inc. (1991), 59 Ohio St.3d 115, 120, 570 N.E.2d 1108,1114.
[5] (1988), 36 Ohio St.3d 100, 522 N.E.2d 489.
[6] (1984), 15 Ohio St.3d 90, 472 N.E.2d 1046.
[7] (1982), 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347, 1348.
[8] (1987), 31 Ohio St.3d 34, 508 N.E.2d 949, syllabus.
[9] (1984), 10 Ohio St.3d 163, 166-167, 462 N.E.2d 403, 406.
[10] As a result of the disposition of this issue, we reject Meeker's agency arguments made against Lech.
[11] This determination that the stopgap insurance policy covers something, albeit not what Meeker would like, renders his equitable-remedy arguments moot.
[12] (1995), 102 Ohio App.3d 708, 657 N.E.2d 851.
[13] An auto liability policy is also listed but is not a part of this appeal.
[14] (Jun. 18, 1996), Franklin App. No. 95APE12-1654, unreported.
[15] (1994), 70 Ohio St.3d 548, 553, 639 N.E.2d 1159, 1163; WestAmerican Ins. Co. v. Gregware (1997), 119 Ohio App.3d 211,695 N.E.2d 7.
[16] (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058.
[17] (1985) 5 Ohio St.3d 217, 450 N.E.2d 1140, 1142.
[18] (1973), 34 Ohio St.2d 55, 295 N.E.2d 659, paragraph one of the syllabus; Doneworth v. Blue Chip 2000 Commercial Cleaning, Inc.
(July 10, 1998), Hamilton App. No. C-970379, unreported.