BYERS, Appellant,

v.

MOTORISTS INSURANCE COMPANIES, Appellee.

[Cite as *Byers v. Motorists Ins. Cos.,* 169 Ohio App.3d 404, 2006-Ohio-5983.]

Court of Appeals of Ohio,
Fourth District, Vinton County.

No. 05CA599.

Decided Nov. 6, 2006.

Ray R. Michalski, for appellant.

John L. Fosson, for appellee.

ABELE, Judge.

{¶ 1} This is an appeal from a Vinton County Common Pleas Court summary judgment in favor of Motorists Insurance Companies, defendant below and

appellee herein.  Brenda Byers, plaintiff below and appellant herein, assigns the following error for review and determination:

The trial court erred in granting appellee's motion for summary judgment and denying appellant's motion for summary judgment in so far as: (a) appellant's use of her garage could not be construed, as a matter of law, as being "in whole or in part for business" and thus being covered by a business use exclusion contained in the subject insurance policy; and/or (b) the subject insurance policy was ambiguous regarding the phrase "in whole or in part for business" and should have been construed in favor of appellant, thereby excepting appellant's use of the garage from the business use exclusion contained in the policy.

{¶ 2} Appellant and her fiancé, John Glenn, worked as independent contractors installing satellite antenna television systems.  They received work orders at appellant's house via fax machine and then retrieved satellite dishes at a Chillicothe warehouse.  Sometimes they used appellant's detached garage to assemble the satellite dish antennas and to store them overnight.

{¶ 3} On March 11, 2000, appellant's garage caught fire, apparently from a wood-burning stove.  The fire damaged the structure and various personal-property items.  Appellee insured the property under a homeowner's insurance policy, but denied coverage for the structure.  Appellee claimed that appellant used the garage "in whole or in part for business," a use that was excluded under the policy.  The claims supervisor advised appellant: "Our investigation finds the garage was used to store tools and equipment used in the insured's work/business.  The policy specifically excludes coverage for other structures used in whole or in part for business."

{¶ 4} On March 12, 2001, appellant filed a complaint that asserted that she is entitled to coverage under her homeowner's policy for the damage to her garage.  Subsequently, both parties requested summary judgment.  Appellee argued that on the date of the fire, appellant used her garage "in whole or in part" for business, which is a use that the policy excludes from coverage.  Appellee contended that because appellant's fiancé used the garage to assemble satellite dishes and sometimes to store the dishes in the garage on an overnight basis, the coverage exclusion applied.  Appellant, however, argued that the phrase "[u]sed in whole or in part for business" is ambiguous.  She asserted that the occasional use of the garage to store the satellite dishes on a short-term basis and on occasion to assemble the dishes did not transform her garage into property "used in whole or in part for business."

{¶ 5} After consideration, the trial court determined that appellant is not entitled to coverage.  The court agreed with appellee that because appellant used

the garage to assemble and to store the satellite dishes, she used the garage "in whole or in part" for business. This appeal followed.

{¶ 6} In her sole assignment of error, appellant asserts that the trial court erroneously granted appellee summary judgment and denied her summary judgment. She asserts that her use of the garage did not constitute a use "in whole or in part for business," and that the phrase "used in whole or in part for business" is ambiguous.

{¶ 7} Initially, we note that appellate courts review trial court summary judgment decisions de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, appellate courts independently review the record to determine whether summary judgment is appropriate. Appellate courts need not defer to trial court decisions. See *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786. Thus, to determine whether a trial court properly granted summary judgment, an appellate court must review the Civ.R. 56 standard for summary judgment as well as the applicable law. Civ.R. 56(C) provides:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

Thus, a trial court may not grant summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164.

{¶ 8} The controversy we must resolve in this matter involves an insurance policy. An insurance policy is a contract. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 9. A court

interpreting a contract should give effect to the contracting parties' intent. Id. at ¶ 11. In doing so, courts must examine the insurance contract as a whole and presume that the language used in the policy reflects the parties' intent. Id., citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. "We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." Id., citing *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. "[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning." *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 436 N.E.2d 1347. When the words used are clear, courts "may look no further than the writing itself to find the intent of the parties." Id. Additionally, the fact that an insurance policy does not define a term does not necessarily mean that the policy is ambiguous. *Chicago Title Ins. Co. v. Huntington Natl. Bank* (1999), 87 Ohio St.3d 270, 719 N.E.2d 955. However, "[t]he insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect." *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488. See, also, *U.S. Fid. & Guar. Co. v. Lightning Rod Mut. Ins. Co.* (1997), 80 Ohio St.3d 584, 687 N.E.2d 717; *McKeehan v. Am. Family Life Assur. Co. of Columbus,* 156 Ohio App.3d 254, 805 N.E.2d 183. When an insurer prepares a contract and includes language that is doubtful, vague, or ambiguous, the language must be construed in favor of the insured and strictly against the insurer. *Taulbee v. Travelers Cos.* (1987), 42 Ohio App.3d 209, 537 N.E.2d 670.

{¶ 9} In the case at bar, we have substantial difficulty with the application of the coverage exclusion clause "in whole or in part for business." The policy defines "business" as "trade, profession, or occupation." "Trade is defined in case law as any business carried on for the purpose of profit or gain or livelihood. The term occupation has been defined as 'any business, trade, profession, pursuit, vocation, or calling' or as 'that which occupies, or engages, the time and attention.' Profession is defined as 'a vocation requiring extensive education in science or the liberal arts and often specialized training.'" (Footnotes omitted.) Windt, Insurance Claims and Disputes (3d Ed.1995) 286–287, Section 11.15. Here, appellant's "business" was installing satellite antenna systems. Occasionally, appellant and her fiancé used the garage to assemble and to store the satellite dishes. At first glance, it appears that appellant's use of her garage falls within the "in whole or in part for business" exclusion. We believe, however, that the precise scope and application of the contract's coverage exclusion "in whole or in part for business" have been inadequately and insufficiently defined. Insurance contracts that contain uncertainties or doubtful

meanings must be construed in favor of the insured and strictly against the insurer. *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 744 N.E.2d 719. Taken to its logical extreme, appellee's interpretation of the phrase "in whole or in part for business" could exclude coverage for the plumber, electrician, or carpenter who parks his tool truck in his garage because he uses the garage "in whole or in part for business." This exclusion draws no discernable line and sets no parameters to distinguish between active, ongoing business pursuits and passive activities remotely related to income or employment pursuits. Furthermore, under appellee's interpretation of the exclusion, physicians, attorneys, engineers, teachers, or architects who, on occasion, conduct telephone conversations from their home or garage with a patient, client, student, or employer, or who place work-related material in their vehicle could, in theory, be excluded from coverage because they used their home or garage for "business purposes in whole or in part." Another example is a homeowner's teenage son or daughter who uses the family lawn-mower, which is stored in the garage, to mow neighborhood lawns for profit. Under appellee's interpretation, the exclusion would apply in the foregoing examples. We believe, however, that the exclusionary clause's language lacks precision and is too vague for us to attempt to ascertain its proper scope and application. The language in the exclusionary clause presents far too many uncertainties to either ignore or attempt to fashion a more definitive and limited application. Here, the exclusion arguably applies to deny coverage for an insured's use of property that in any way remotely touches any "business" or income-earning effort.

{¶ 10} We also note that in the case sub judice, appellant did not actually perform the work that earned her money (i.e., install satellite antennas) in her garage. Instead, she used the garage as a matter of convenience. See, generally, Windt, Insurance Claims and Disputes (3d Ed.1995) 286–287, Section 11.15 ("The general rule is that to constitute a business pursuit for the purpose of an exclusion in a liability policy, there must be continuity and a profit motive. The business need not be the insured's principal occupation. * * * The insured's involvement with the activity, however, should be more than minimal (footnotes omitted)"); see, also, *Lenart v. Craig* (May 12, 1994), Cuyahoga App. Nos. 65372 and 65373, 1994 WL 189433 ("[I]n order for an activity to constitute a 'business pursuit,' two elements must be satisfied[:] (1) continuity; and (2) profit motive.") Here, appellant did not continuously use the garage to store and assemble the satellite systems.

{¶ 11} Our research located one Ohio case that touched upon this issue, but the court's reasoning is not apparent. In *Singler v. Gen. Acceptance Group* (Sept. 22, 1978), Erie App. No. E–78–28, 1978 WL 214865, the plaintiffs had a home and a separate three-stall garage. A tenant of the home used one of the three stalls

to store several coin-operated amusement and vending machines that he used in conducting a business operation at county fairs. After a fire damaged the garage, the insurer denied the claim and asserted that the policy excluded coverage for structures used for "business purposes." The trial court entered judgment in the plaintiffs' favor. On appeal, the insurer argued that the tenant's use of the garage for storing vending machines constituted a use "in whole or in part for business purposes," which the policy excluded. The trial court determined that renting one portion of the residence to a tenant was not doing business and that the tenant's use of the garage to store property was not doing business under the policy definition. The policy defined "business" as:

(1) a trade, profession or occupation, including farming, and the use of any premises or portion of residence premises for any such purposes; and

(2) the rental or holding for rental of the whole or any portion of the premises by any insured: but business shall not include:

(a) the occasional rental or holding for rental of the residence premises for dwelling purposes;

(b) the rental or holding for rental of a portion of the residence premises for dwelling purposes unless for the accommodation of three or more roomers or boarders;

(c) the rental or holding for rental of a portion of the residence premises for private garage purposes; or

(d) the rental or holding for rental of a portion of the residence premises as an office, school or studio.

The appellate court concluded that "there is substantial probative evidence to support the findings of fact and conclusions of law of the trial court." One explanation for the court's conclusion is that the alleged "business" use was so minimal that one could not reasonably state that the property was used "for business."

{¶ 12} We recognize that several Ohio cases that construe the word "business" in a homeowner's insurance policy do not find the term to be ambiguous. None of the cases, however, involved the exact phrase at issue in the case at bar. For example, in *Watkins v. Brown* (1994), 97 Ohio App.3d 160, 646 N.E.2d 485, the court concluded that a business-exclusion provision in a homeowner's policy excluded coverage to the insured who babysat for a friend's child in her home. In *Watkins,* Brown received $40 per week to babysit on weekdays. One day, Brown broke the child's leg while changing her diaper, and the Watkinses sued Brown. Brown's homeowner's insurance carrier, Cincinnati Insurance Company, asserted that Brown's homeowner's policy did not cover the child's injuries because the policy excluded from liability coverage damages "arising out of any activities of any insured in connection with a business owned or controlled by any

insured." The appellate court stated that the provision "unambiguously excludes from coverage any liability arising from activities [the insured] engaged in that were connected with [the insured's] own business" and that the insured's babysitting activity constituted a "business." 97 Ohio App.3d at 164, 646 N.E.2d 485. The court noted that the policy defined "business" to include "any trade, profession, or occupation of any kind * * *. Newspaper delivery, baby-sitting, caddying, lawn care, and similar incidental business activities by a minor resident of your household are not considered business," and concluded that "[a]pplying the principles of strict construction, we conclude that Brown's baby-sitting services must at least qualify as a 'trade, profession, or occupation of any kind' in order to qualify as a 'business.' " 97 Ohio App.3d at 165, 646 N.E.2d 485. "We take 'trade, profession, or occupation of any kind' to signify that baby-sitting may be a kind of trade or occupation for which the policy was not meant to provide liability coverage." 97 Ohio App.3d at 165, 646 N.E.2d 485. The court looked to the ordinary meaning of "trade," which is defined as " 'the business one practices or the work in which one engages regularly; one's calling; gainful employment; means of livelihood.' " The court concluded that Brown's babysitting constituted a trade:

> Brown and the Watkinses negotiated a fee for Brown's baby-sitting services to compensate her for her time and trouble. This amount, $40, was paid in cash each Friday, and was not used to purchase food or diapers or any other supplies for Danielle. The fact that Brown did not realize an enormous profit from this arrangement is not dispositive, nor is the fact that she probably would not have agreed to baby-sit if someone other than her good friend had asked her to do it. The definition of "trade" does not require that the tradesperson be motivated entirely by profit, and the $40 she realized each week was pure profit–gain produced by her labor. Moreover, her labor was regular–each weekday from 9:00 to 4:00 or from 12:00 to 4:00–though it lasted only about six months. * * * Brown's baby-sitting * * * was work she engaged in regularly, and which produced an income for her. It was therefore a business as contemplated in the homeowner's policy.

(Citation omitted.) 97 Ohio App.3d at 165–166, 646 N.E.2d 485. We have no quarrel with the *Watkins* holding for several reasons. First, the *Watkins* court was not called to decide a matter that involved coverage and loss to the homeowner's residence unrelated to the actual business use (i.e., in *Watkins*, the homeowner charged a fee for babysitting and actually sought coverage for risks related to the business, rather than damage or loss sustained for reasons completely unrelated to the business activity such as a house fire caused by faulty wiring). Second, we do not believe that the language the *Watkins* court construed is sufficiently similar to the language in appellee's policy. In fact, the

language in *Watkins* is more specific than the language appellee employed in the case sub judice.

{¶ 13} We also find that the cases appellee cites are inapposite. In *United Ohio Ins. Co. v. Metzger* (Feb. 8, 1999), Putnam App. No. 12–98–I, 1999 WL 84201, the parties agreed that the loss arose out of or was in connection with the insured's business. The question on appeal was whether the insured's wife should be denied coverage. In the case at bar, the parties do not agree that the loss arose out of or was in connection with appellant's business. In *Nationwide Mut. Ins. Co. v. Eckmeyer* (2001), 145 Ohio App.3d 753, 764 N.E.2d 487, the court determined that a provision that excluded coverage for "Bodily injury or property damage arising out of the ownership, maintenance or use of a vehicle when used: * * * b. For retail or wholesale delivery, including pizza, magazine, newspaper and mail delivery," was not ambiguous. The court stated that "the term 'delivery' should be construed to include all work-related activity engaged in by an insured whose primary work-related responsibility is as a delivery driver in the course of his or her working day." 145 Ohio App.3d at 757, 764 N.E.2d 487. The case sub judice, however, involves different terminology and different facts. In *Shuback v. State Auto. Mut. Ins. Co.* (Dec. 6, 1999), Mahoning App. No. 97–CA–176, 1999 WL 1138563, the court looked to the following "business use exclusion":

A. We do not provide Liability Coverage for any person:

* * *

6. While employed or otherwise engaged in the "business" of:

a. selling;

b. repairing;

c. servicing;

d. storing; or

e. parking;

vehicles designed for use mainly on public highways. This includes road testing and delivery.

The court determined that the insured's conduct constituted being employed or otherwise engaged in the business of selling or delivering cars. The court did not examine the precise language of the terms, but instead focused on the argument that the insured's conduct fell within the exclusion. In the case at bar, by contrast, we believe that appellee's exclusion language is vague and is not sufficiently defined. Thus, we are unable to determine whether appellant's conduct falls within the exclusion.

{¶ 14} In summary, we agree with appellant that the phrase "used in whole or in part for business" is vague and lacks precision. See, also, *Roland v. Nation-*

*wide Mut. Fire Ins. Co.* (2001), 286 A.D.2d 872, 730 N.Y.S.2d 599 (concluding that insurer could not deny coverage for "other structure" used to store business items because "[t]he phrase 'used in whole or in part for business purposes' is ambiguous in the absence of any qualifying language"). Here, the language makes no effort to distinguish between an ongoing business concern conducted in a home or garage and passive or incidental activities remotely related to a person's employment or income. Consequently, we must construe the provision in appellant's favor, find that the exclusion does not apply, and conclude that the exclusion does not preclude coverage. See *Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256.

{¶ 15} We, however, certainly recognize and acknowledge valid concerns by insurers in these situations. Insureds should not be permitted to unilaterally expand their bargained-for homeowner's insurance coverage by simply choosing to operate a commercial enterprise and expect expanded coverage springing from their homeowner's insurance policy. A commercial enterprise exposes insureds and insurers to increased risks. Therefore, insureds should obtain appropriate coverage and pay the corresponding premium to reflect the increased risk and increased coverage associated with business concerns. However, contract language must clearly define and delineate excluded activities. Contract language that could be construed to constitute an absolute prohibition on any activity even remotely involved with a business or income enterprise cannot be enforced unless that prohibition is clearly and explicitly set forth. Many people engage in activities that arguably involve passive "business" activities within their private residences. An insured who stores a briefcase or records in her garage or home should not, in our view, be deemed to have been engaged in a business activity and fall under the coverage exclusion.

{¶ 16} Second, even if we accepted appellee's argument that the contract's exclusionary language is clear and unambiguous and did exclude the structure from coverage if it was used "in whole or in part for business," we believe that the business activity in the case sub judice was so minimal that it did not invoke the exclusion's application. Here, the alleged business activity apparently did not cause the loss or damage. Activities related to a business that may result in a de minimis increase in risk and did not cause the loss or damage should not preclude coverage under an insurance contract.

{¶ 17} Accordingly, based upon the foregoing reasons, we hereby sustain appellant's sole assignment of error, reverse the trial court's judgment, and remand the matter for further proceedings consistent with this opinion.

Judgment accordingly.

KLINE, J., concurs in judgment only.

HARSHA, P.J., dissents.

HARSHA, Presiding Judge, dissenting.

{¶ 18} It is clear that the appellant used the garage "in whole or in part for business" by storing satellite parts in it and by occasionally using the space to assemble the dishes.

{¶ 19} Consider the example of a plumber, electrician, or carpenter who has a work vehicle parked in the garage. Storing a work vehicle in a garage or storing items for work in your own car doesn't constitute "using" the garage for business. Most people use their vehicles to get to and from work and have various work-related items in their vehicles. But that does not mean that merely storing that vehicle—even if it is a company owned vehicle—is "using" that garage for business purposes. However, if you store business inventory in the garage you are "using" the garage for work purposes.

{¶ 20} Another scenario that may arise involves the teenage son or daughter who uses the family lawnmower to mow lawns for profit. The policy defines "business" to include "trade, profession, or occupation," and I do not believe that occasional lawn mowing by a teenager meets any of the dictionary definitions of trade, profession, or occupation, although someone who ran a landscaping business would meet that definition.

{¶ 21} Likewise, if you are a doctor or lawyer talking to a patient or client on your cell phone in the garage, you are not using the garage for work purposes. You may be standing in the garage but you are not "using" it any more than you are using the grocery store for work purposes if you happen to be talking to a patient or client when standing in line to pay for your groceries. You happen to be there, but your presence does not involve the structure in your business. "Presence" and "use" are not synonymous.

{¶ 22} Finally, the contract here is not vague. This exclusion from coverage applies only to "other structures," not to the actual dwelling where the insured resides. So, an insured would not void coverage to the residence itself by working from home, either occasionally or on a regular basis. While there may indeed be some "close calls" as to whether the business exclusion applies, this is not one of them. Appellant clearly used the garage for business purposes in at least two ways—to store items associated with her business and to assemble items for her business. I disagree with the majority's contention that appellant used the garage as a mere "convenience." She clearly needed to assemble and store the dishes somewhere and used her garage for this purpose. Rather than reversing the trial court's grant of summary judgment, we should affirm it on the

narrow facts of this case, while recognizing that perhaps there are other "close" situations that may result in a different result.