[Cite as *Erie Ins. Exchange v. Bullock*, 2015-Ohio-5406.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| ERIE INSURANCE EXCHANGE | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2015CA00112 |
| SAMUEL E. BULLOCK, ET AL | : |  |
|  | : |  |
| Defendants-Appellants | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Court of
                             Common Pleas, Case No. 2014CV01601


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      December 21, 2015

APPEARANCES:

For Plaintiff-Appellee              For Defendants-Appellants

KENNETH CALDERONE                   CHARLES HALL III.
DOUGLAS LEAK                        Hall Law Firm
3737 Embassy Parkway, Ste. 100      610 Market Avenue North
Akron, OH  44333                    Canton, OH  44702

*Gwin, P.J.*

{¶1} Appellants appeal the May 11, 2015 judgment entry of the Stark County Court of Common Pleas granting appellee's motion for summary judgment.

*Facts & Procedural History*

{¶2} In August of 2011, appellants Samuel and Annie Bullock moved to 6500 North Nickelplate Street in Louisville, Ohio. The lot consists of approximately 10.6 acres and the property includes a house, a barn, and a pool house. When appellants purchased the property, they contacted the Vaughan Insurance Agency to obtain insurance on the property. Appellants purchased a standard homeowner's policy for the Nickelplate property from appellee Erie Insurance Exchange through the Vaughan Insurance Agency. This insurance policy was in effect from August 8, 2013 to August 8, 2014. Under the "Other Structures" portion of the policy, it states as follows:

> We do not pay for loss to structures:
>
> 1. Used in whole or in part for business purposes (except rental or holding for rental structures used for private garage purposes); or
>
> 2. Used to store business property. However, if the business property is solely owned by anyone we protect, we do provide coverage for the structure. The business property may not include gases or liquid fuel, unless the fuel is in a fuel tank that is permanently installed in a vehicle or craft which is part or stored in the structure.

The insurance policy defines "business" as "any full-time, part-time or occasional activity engaged in as a trade, profession or occupation, including farming."

{¶3} In 2012, Annie surprised Samuel with a gift of chicken and turkey peeps. Appellants purchased more chickens and turkeys in both 2013 and 2014. On March 20, 2014, the barn which housed the chickens, turkeys, and eggs burned down. Appellants submitted a claim to appellee under the homeowner's policy.

{¶4} On July 7, 2014, appellee filed a complaint for declaratory judgment against appellants. Appellee sought a judicial declaration regarding the rights of the parties; specifically, that it owes no coverage for the burned-down structure. Appellants filed an answer and counterclaim. Appellants also filed a third-party complaint against Timothy Vaughan, Pamela Miller, and Douglas McGuire. In May of 2015, appellants voluntarily dismissed both their counterclaims against appellee and their third-party complaint.

{¶5} On April 10, 2015, appellee filed a motion for summary judgment. Appellee submitted multiple depositions with exhibits in support of its motion for summary judgment, including the depositions of Timothy Vaughan ("Vaughan") Pamela Miller ("Miller"), Douglas McGuire ("McGuire"), and Samuel Bullock ("Bullock").

{¶6} Vaughan, the principal of the Vaughan Insurance Agency, testified that when appellants made the application for insurance, he personally inspected the property and took photos of the property. Vaughan did not see any chickens, turkeys, or any farming equipment during inspection. Vaughan stated that he had no indication that appellants intended to raise chickens and sell eggs and, if he had known that, he would have contacted the underwriter to see if appellants were eligible for coverage with Erie. Vaughan testified that the first notification the agency had about the chickens and eggs was on June 10, 2013. Vaughan personally called appellants on December 9,

2013 and left a message for appellants to please follow-up with him regarding the chickens and eggs.

{¶7} Miller, an insurance agent who used to work at Vaughan Insurance, testified that she received a call from Bullock on June 10, 2013. Bullock told her that they were raising animals and were going to sell the eggs. Bullock was concerned about potential risk if someone got sick from the eggs. Miller stated that, during the conversation, she told Bullock that his homeowner's policy would not cover farm exposures. Miller checked with Mennonite Mutual Insurance regarding coverage for Bullock, but they were not interested. Miller did not contact anyone else. Miller tried to call Bullock on June 18, July 23, and August 13 and no one answered the phone. Miller did not send a letter to Bullock notifying him that he faced additional risk.

{¶8} McGuire, an insurance agent at Vaughan Insurance, testified that he left several messages for Bullock starting in January of 2014 about discussing coverage for farm animals. McGuire needed to know exactly what kind of animals were involved and what Bullock was doing with the animals and eggs. McGuire sent a letter to appellants on February 14, 2014 requesting that they call the office to discuss the animals and eggs. The letter was not returned to the agency.

{¶9} Bullock testified that when he bought the property in 2011, he had no intent to have chickens or farm animals. In procuring homeowner's insurance, appellants completed a written application. The application required appellants to list any animals, including farm animals, on the premises. Appellants stated that they had two dogs. No farms animals were identified. Appellants also answered "no" to the question on the

application asking whether they were conducting any business, farming, or occupational pursuits at the premises.

{¶10} Bullock stated that in 2011, he made a claim with Vaughan for wind damage to the poolhouse and that a person from Erie came to assess the damage. According to Bullock, the representative from Erie was there after Bullock got the first batch of chickens, so the chickens "were probably there" when Erie assessed the damage.

{¶11} In 2012, Bullock's wife surprised him with baby chickens and turkeys. At first, Bullock had about forty to fifty chickens and twenty-five to thirty turkeys. Bullock bought food tanks, water trays, hay, wood chips, and feed for the animals. Bullock stated that they originally intended to raise and eat the birds and the eggs. Bullock began giving eggs away at church. In 2013, appellants purchased more chickens and turkeys. They ordered three to four hundred more chickens and seventy-five more turkeys. Appellants continued to give away the eggs and butchered the chickens and turkeys. In the spring of 2014, appellants purchased more chickens and turkeys.

{¶12} Bullock testified that they began selling the eggs and the animals in 2013. Bullock stated that they sold the eggs at church, from out of the home, and at the farmer's market where they rented space to sell their eggs. Bullock testified that two to three times per day people would call the house to order or request eggs. Bullock does not keep track of what he sells or gives away and does not keep bills or receipts. At one point, Bullock's nephew told him a wholesale chicken butcher was willing to have him raise chickens for them; however, Bullock declined the offer.

{¶13} In 2013, appellants obtained a license from the Department of Agriculture to sell chickens, turkeys, and eggs. Appellants also obtained a "Retail Food Establishment License" from the Stark County Health Department for "Nickel Plate Farms," the name of their operation. Bullock testified that when he contacted the Department of Agriculture to inquire whether he needed a license to sell eggs, chickens, and turkeys, they told him he needed a license. Appellants labeled their egg cartons with "Nickel Plate Farm: Eggs-Chickens-Turkeys." The labels stated that the chickens, turkeys, and eggs were "free range," "heart smart," and had "no chemicals." The labels also contained appellants' address and phone number.

{¶14} Bullock testified that his son told him to get insurance in case someone at church got sick from the eggs. Bullock contacted Vaughan Insurance and spoke to a female agent on the phone, who Bullock testified he asked to get insurance to protect him in case someone got sick from the eggs. The agent told Bullock she would check into it. Bullock testified that the agent did not tell him that his current homeowner's policy would not cover it if someone got sick from the eggs; rather, they did not talk about the homeowner's policy at all during the conversation. Bullock stated that the agent never got back to him. Bullock did not call back to see if the agent had an answer for him. Bullock testified that he never received the February 2014 letter from Vaughan Insurance, though the letter had the correct name and address on it.

{¶15} Bullock stated that the raising and selling of the chickens, turkeys, and eggs was a hobby and kept him from having nightmares due to post-traumatic stress disorder. Bullock testified that the poultry raising is part of his ministry and that he was not making any money from it based upon the costs of the operation. Bullock stated

that buying chickens that produced different kinds and colors of eggs was "just fun." Bullock testified that he went to the farmer's market to teach his children how to be independent.

{¶16} Appellants filed a memorandum in opposition to appellee's motion for summary judgment on April 24, 2015 and appellee filed a reply on May 1, 2015. On May 11, 2015, the trial court issued a judgment entry granting appellee's motion for summary judgment. The trial court found that appellants' poultry operation was, at the very least, an occasional occupation or trade that occupied or engaged appellants' time and attention. Further, that it is clear from the record that appellants carried on the poultry farming for the purpose of profit or gain and that profit or gain does not preclude business loss. The trial court concluded that appellants were clearly operating a business through the raising of the poultry and sale of the eggs. Thus, since appellants were operating a business within the definition of the policy, the barn is not covered property under the homeowner's insurance because it falls under the exclusion language in the policy.

{¶17} Appellants appeal the trial court's May 11, 2015 judgment entry and assign the following as error:

{¶18} "I. THE TRIAL COURT IMPROPERLY DECIDED THE FACTUAL QUESTION OF WHETHER THE APPELLANTS' POULTRY ACTIVITY WAS A 'BUSINESS' AND NOT A 'HOBBY.'

{¶19} "II. THE TRIAL COURT TOOK THE QUESTION AWAY FROM THE JURY BY NARROWLY FOCUSING ON ONLY ONE FACTOR OF DISTINGUISHING A 'BUSINESS' FROM A 'HOBBY' AND IGNORING ALL OF THE OTHER FACTORS."

I. & II.

*Summary Judgment Standard*

{¶20} Civ.R. 56 states, in pertinent part:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

{¶21} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 474

N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.,* 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶22} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶23} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrates absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

*Insurance Policy*

{¶24} The construction of an insurance contract is a matter of law to be determined by the court. *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 87 Ohio St.3d 270, 719 N.E.2d 955 (1999). In interpreting the contract, a court is to give effect to the intent of the parties to the agreement. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216,

2003-Ohio-5849, 797 N.E.2d 1256 (2003).  In doing so, "[w]e examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy.  We look to the plain and ordinary meaning of language used in the policy unless another meaning is clearly apparent from the contents of the policy.  When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties."  *Id.*  The general rule of liberal construction cannot be employed to create an ambiguity where there is none. *Progressive Max Ins. Co. v. Grange Mut. Cas. Co.,* 8th Dist. Cuyahoga No. 81656, 2003-Ohio-4564.  "Only where a contract of insurance is ambiguous and, therefore, reasonably susceptible to more than one meaning must the policy language be construed liberally in favor of the insured who drafts the instrument."  *Id.*

{¶25} In their two assignments of error, appellants argue the trial court erred in granting summary to appellee.  Specifically, appellants argue the trial court improperly focused on one factor in distinguishing a "business" from a "hobby," and in finding that appellants were operating a business.  Further, that since appellants made less than $500 from egg and poultry sales, there is no profit motive.  We disagree.

{¶26} The Erie policy defines business as "any full-time, part-time or occasional activity engaged in as a trade, profession, or occupation, including farming."  Trade is defined in case law as "any business carried on for the purpose of profit or gain or livelihood" and occupation is defined as "any business, trade, profession, pursuit, vocation or calling or as that which occupies, or engages, the time and attention." *Byers v. Motorists Ins. Co.,* 169 Ohio App.3d 404, 2006-Ohio-5983, 863 N.E.2d 196 (4th Dist. Vinton).

{¶27} Courts applying Ohio law have held that in order for an activity to constitute a "business," two elements must be satisfied: continuity and profit motive. *State Farm Fire & Cas. Co. v. Hiermer*, 720 F. Supp. 1310 (S.D. Ohio 1998), *aff'd*, 884 F.2d 850 (6th Cir. 1989); *Lenart v. Doversberger*, 8th Dist. Cuyahoga No. 65372, 65373, 1994 WL 189433 (May 12, 1994); *Byers v. Motorists Ins. Co.,* 169 Ohio App.3d 404, 2006-Ohio-5983, 863 N.E.2d 196 (4th Dist. Vinton).

{¶28} Continuity is generally shown by a "customary engagement or stated occupation." *Lenart v. Doversberger*, 8th Dist. Cuyahoga No. 65372, 65373, 1994 WL 189433 (May 12, 1994). The business need not be the insured's primary occupation or employment. *Id.* However, the activities should be conducted on a "regular basis." *West American Ins. Co. v. Sluder*, 119 Ohio App.3d 211, 695 N.E.2d 7 (1st Dist. Hamilton 1997).

{¶29} The undisputed facts in this case establish the continuity element. Bullock testified to maintaining a significant operation that included hundreds of chickens and turkeys. Bullock had to acquire various supplies such as feeding trays, hay, water bottles, and wood chips. Appellants began selling eggs and poultry in 2013 and sold them at church, out of the home, and at a farmer's market. Bullock testified that two to three times per day people would call the house to order or request eggs.

{¶30} With regards to "profit motive," this does not necessarily require an actual profit be realized, rather "an occupation or employment will not be excluded from the classification of business merely because it actually results in loss instead of profit; but it is essential that livelihood or profit be at least one of the purposes for which the employment is pursued." *Lenart v. Doversberger*, 8th Dist. Cuyahoga No. 65372,

65373, 1994 WL 189433 (May 12, 1994). A profit motive does not necessarily require an actual profit and, further, that actual profit need not be an immediate or even primary consideration of a business pursuit. *Id*. The venture may be a side business or an activity that the insured pursues primarily for purposes other than pecuniary gain. *Id*. Further, the definition of "trade" does not require that the tradesperson be motivated entirely by profit. *Watkins v. Brown*, 97 Ohio App.3d 601, 646 N.E.2d 485 (8th Dist. Cuyahoga 1994).

{¶31} Appellants argue that the poultry raising was a hobby because they were not actually making any money from it based upon the costs of the operation. Further, that they did not have a "profit motive," as evidenced by Bullock's testimony that he was trying to teach his children to be independent. We disagree.

{¶32} Bullock testified that they began selling eggs and chickens in 2013. They sold them at church, out of their home, and at a farmer's market. Bullock stated that people would call two to three times per day to request or purchase eggs. Bullock testified that they had hundreds of chickens and turkeys. Further, that they branded their eggs as "Nickel Plate Farms." Bullock obtained a license to sell eggs, chickens, and turkeys through the Department of Agriculture and a "Retail Food Establishment License" from the Stark County Health Department for Nickel Plate Farms, the name of appellants' operations. Appellants labeled the cartons of the eggs they sold with the name "Nickel Plate Farms" and the labels had their name and address on it. The labels also said "free range," "heart smart," and "no chemicals."

{¶33} Regardless of whether the business realized an actual profit, profit motive is evident from the evidence submitted. While appellants started by giving away eggs,

they transitioned to selling eggs, chickens, and turkeys. They purchased more chickens and turkeys, more supplies, branded their eggs, and obtained licenses to sell the eggs, chickens, and turkeys. Simply because Bullock was utilizing the business to help teach his children to be independent does not abrogate the business classification of the operation. As noted above, actual profit need not be an immediate or primary consideration of a business pursuit. Further, a "trade" does not require that the person be entirely motived by profit. *Watkins v. Brown*, 97 Ohio App.3d 601, 646 N.E.2d 485 (8th Dist. Cuyahoga 1994); *Lenart v. Doversberger*, 8th Dist. Cuyahoga No. 65372, 65373, 1994 WL 189433 (May 12, 1994).

{¶34} Appellants also argue that Bullock's testimony that the chickens, turkeys, and eggs are a "hobby," are "just fun," and prevent him from having nightmares creates a genuine issue of material fact as to whether the activities are a "business" or a "hobby." We disagree. Although Bullock testified that his farming operations were a "hobby," and "just for fun," the evidence, as detailed above, shows otherwise. See *Mack v. Nationwide Mut. Fire Ins. Co.*, 6th Dist. Lucas No. L-04-1180, 2005-Ohio-2746. Accordingly, regardless of Bullock's characterization of his farming endeavors as merely being a hobby, we find the evidence establishes that appellants' poultry operation was a "full-time, part-time or occasional activity engaged in as a trade, profession, or occupation."

{¶35} Based upon the foregoing, we find that there is no genuine issue of material fact as to whether appellants' operation was a business pursuant to the definition provided in the homeowner's insurance policy, as it is a "full-time, part-time or occasional activity engaged in as a trade, profession, or occupation."

{¶36} In addition, courts must interpret insurance contracts "to the end that a reasonable interpretation of the insurance contract is consistent with the apparent object and plain intent of the parties may be determined." *Lenart v. Doversberger*, 8th Dist. Cuyahoga No. 65372, 65373, 1994 WL 189433 (May 12, 1994). Vaughan testified that he had no indication that appellants intended to raise chickens and sell eggs when they applied for insurance. Bullock testified that, when he bought the property, he had no intent to have chickens or farm animals. No farm animals were identified on the homeowner's insurance application and appellants answered "no" to the question on the homeowner's insurance application asking whether they were conducting any business, farming, or occupational pursuits at the premises. When appellants decided to sell the eggs, Bullock called Vaughan Insurance and was concerned about the potential risk in case someone got sick from the eggs. Bullock testified that he and Miller did not talk about the homeowner's policy at all during the phone conversation. In light of this testimony, it is clear that Bullock did not purchase the homeowner's insurance policy with the intent to secure coverage for damages occurring as a result of the business of raising poultry and selling eggs.

{¶37} Having found that there is no genuine issue of material fact as to whether appellants were operating a "business" within the definition of the homeowner's policy, we find the trial court did not err in finding that the barn falls under the exclusion language in the policy and is not covered property. The "other structures" portion of the policy specifically states that they do not pay for loss to structures "used in whole or in part for business purposes" or "used to store business property." Accordingly, the trial court did not err in granting summary judgment to appellee.

{¶38} Based upon the foregoing, appellants' first and second assignments of error are overruled.  The May 11, 2015 judgment entry of the Stark County Common Pleas Court is affirmed.


By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur